968 F.2d 1221
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
John Kalani LINCOLN, Petitioner-Appellant,
v.
Franklin Y.K. SUNN, Defendant-Appellee.
 No. 90-16139.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 5, 1992.
Decided July 21, 1992.
 
 Before CYNTHIA HOLCOMB HALL, BRUNETTI and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 John Lincoln appeals the district court's denial of his writ of habeas corpus. In his petition, Lincoln alleged, inter alia, that the State of Hawaii violated his Fifth Amendment right to be free from double jeopardy when it retried and convicted him of murder following the district court's grant of his original habeas corpus petition.[1] Additionally, he asserted that a third trial, based on the allegation that he hired Anthony Kekona to murder Paul Warford, would likewise violate the constitutional prohibition against subjecting a defendant in a criminal case to double jeopardy. Lincoln also argued that collateral estoppel bars the State from attempting to prove he hired Kekona to kill Warford, as that question was decided in his favor by the jury in his first trial.
 
 
 3
 Although Lincoln is presently awaiting trial on the charge that he murdered Warford, we have jurisdiction to consider his double jeopardy claim at this time. See Justices of Boston Mun. Court v. Lydon, 466 U.S. 294, 303 (1984) ("[A] requirement that a defendant run the entire gamut of state procedures, including retrial, prior to consideration of his claim in federal court, would require him to sacrifice one of the protections of the Double Jeopardy Clause."). In order to obtain habeas relief pursuant to 28 U.S.C. § 2254, a state prisoner must be held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. See also Engle v. Isaac, 456 U.S. 107, 119 (1982). For the reasons set forth below, we conclude that constitutional safeguards do not bar the State from reprosecuting Lincoln for the murder of Warford. Accordingly, we affirm the district court's denial of his petition.
 
 I. COLLATERAL ESTOPPEL
 
 4
 The Fifth Amendment prohibition against double jeopardy embodies the concept of collateral estoppel. Ashe v. Swenson, 397 U.S. 436, 445 (1970). Constitutional concerns are implicated by collateral estoppel, however, only "where a fact necessarily determined in the defendant's favor by his earlier acquittal [makes] his conviction on the challenged second trial ... impossible unless the fact could be relitigated and determined adversely to the defendant." Pettaway v. Plummer, 943 F.2d 1041, 1046-48 (9th Cir.1991) (quotation omitted) (alteration in original). See also United States v. Seley, 957 F.2d 717, 720-21 (9th Cir.1992). If the application of collateral estoppel restricts proof, but does not make conviction impossible, the Double Jeopardy Clause is not violated. Pettaway, 943 F.2d at 1048. Hence, a two-step inquiry is necessary to resolve Lincoln's claim; namely, 1) Does collateral estoppel apply; and if yes, 2) Will the Double Jeopardy Clause prohibit retrial?
 
 
 5
 The doctrine of collateral estoppel provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe, 397 U.S. at 443. To determine whether that doctrine applies, the court must: 1) identify the issues in the two actions to decide whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine; 2) examine the record of the prior case to decide whether the issues were "litigated" in the first case; and 3) examine the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case. Pettaway, 943 F.2d at 1043-44.
 
 
 6
 The precise issue Lincoln seeks to foreclose the State from litigating in his third trial is whether he hired Kekona to kill Warford. In his first trial, that question was submitted to the jury, via the improper charge of "Murder for Hire," as the substantive offense. During closing argument in Lincoln's second trial, the prosecutor stated: "Did the defendant John Lincoln hire Anthony Kekona, Junior to murder Paul Warford, David Blue, and Harriet Savage? That's what the question boils down to." Presumably, if permitted to in the third trial, the State would once again try to persuade a jury to conclude that Lincoln hired Kekona to kill Warford. Thus, the issue is "sufficiently similar and sufficiently material" in each of the actions to justify the application of collateral estoppel, if the other two requirements are met.
 
 
 7
 The question of murder for hire was actually litigated in Lincoln's first trial. At trial, the State's primary theory concerning Lincoln's culpability was that he hired Kekona, albeit perhaps as a middleman, to kill Warford. Although misconceived, the original indictment, under which Lincoln was tried, charged him with the offense of "Murder for Hire." Because of the "inartfully drafted" indictment, the State actually litigated the sentence enhancement "Murder for Hire," as a substantive offense. In that first trial, the jury was instructed on the criminal offense of "Murder for Hire," and charged to decide whether "[Lincoln] did hire ... Kekona to kill ... Warford." Accordingly, we conclude this issue was actually litigated in the first trial.
 
 
 8
 The last step in the analysis requires us to determine whether the question of murder for hire was necessarily decided by the jury in Lincoln's first trial. Collateral estoppel is available to bar relitigation of an issue even if the "determination at issue in the present case was not formally necessary for a finding of guilt on the [substantive] charge." Pettaway, 943 F.2d at 1044. The critical inquiry in that situation is "whether the sentence proceeding at issue resembled a trial on punishment." Durosko v. Lewis, 882 F.2d 357, 359 (9th Cir.1989) (citing Bullington v. Missouri, 451 U.S. 430, 439 (1981)), cert. denied, 110 S.Ct. 1930 (1990); accord Pettaway, 943 F.2d at 1044. Specifically, the court must be satisfied that the enhancement proceeding was itself like a trial on guilt or innocence. Durosko, 882 F.2d at 359 (relying on Bullington ); accord Pettaway, 943 F.2d at 1044.
 
 
 9
 The facts here compel the conclusion that the "hallmarks of a trial on guilt or innocence" were present for the determination of the enhancement, murder for hire, in Lincoln's first trial. In Hawaii, murder for hire is relevant for purposes of sentence enhancement, Haw.Rev.Stat. § 706-606(a)(iii), not as an element of the statutory offense of murder. See id. § 707-701. Nevertheless, the original indictment charged Lincoln with committing the offenses of "Murder for Hire," in violation of Haw.Rev.Stat. §§ 707-701 and 706-606, and "Attempted Murder," in violation of Haw.Rev.Stat. §§ 705-500 and 707-701.
 
 
 10
 At trial, the judge instructed the jury on the purported elements of "Murder for Hire," and then directed the jury that alternatively, it could find Lincoln guilty of the "lesser included offense" of murder. The jury was instructed that "[a] person commits [the offense of Murder for Hire] if he hires another person who intentionally or knowingly causes the death of the victim. In order to convict [Lincoln] of this offense, the State must prove each element of the crime charged beyond a reasonable doubt." The judge went on to instruct the jury that if it was not "satisfied, beyond a reasonable doubt, that [Lincoln] is guilty of [Murder for Hire, he] may be convicted of a lesser included offense ... provided ... that the evidence in this case convinces the jury beyond a reasonable doubt that he is guilty of such lesser included offense." The jury was then instructed on the lesser included offense of Murder under an accomplice and solicitation theory. Subsequently, the first jury found Lincoln guilty of murder, the lesser included offense.[2] In its brief, the State concedes that the jury found Lincoln was not the person responsible for "hiring" Kekona to kill Warford. We conclude the jury necessarily deliberated this charge and decided the State did not prove beyond a reasonable doubt that Lincoln hired Kekona to kill Warford.
 
 
 11
 Although resulting from the inartfully drafted indictment, the question of whether Lincoln "hired" Kekona to kill Warford was nevertheless pleaded and tried to the jury. The jury necessarily decided the State did not prove beyond a reasonable doubt that Lincoln "hired" Kekona to kill Warford. Accordingly, we conclude the jury's determination has collateral estoppel effect.[3] This conclusion alone, however, does not provide an adequate legal basis for this court to grant Lincoln's petition. Rather, the determination of collateral estoppel effect alone is relevant only for determining the admissability of the State's evidence in future trials. There is no authority under the writ for this court to rule on the admissability of evidence that may be presented in a subsequent state criminal proceeding. Unless double jeopardy is also violated by the admission of such evidence, Lincoln's petition must be denied.
 
 II. DOUBLE JEOPARDY
 
 12
 In Grady v. Corbin, 495 U.S. 508 (1990), the Supreme Court stated that:
 
 
 13
 the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.... The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct.
 
 
 14
 Id. at 521. Thus, the State is not permitted to reprosecute on a theory it has tried and failed to prove before. See Pettaway v. Plummer, 943 F.2d 1041, 1047 (9th Cir.1991) (citing the situation faced by the Court in Grady ). The Double Jeopardy Clause is violated if the State, to succeed in a second prosecution, must relitigate and receive a favorable determination on a fact already decided in the defendant's favor in an earlier prosecution. Id.
 
 
 15
 Assuming without deciding that the Court's holding in Grady could be applied on collateral review, we conclude that the Double Jeopardy Clause will not bar the State's reprosecution of Lincoln for murder under Haw.Rev.Stat. §§ 707-701, 702-221 and 702-222. The State in this case need not rely on a favorable determination whether there was a contract for the murder to gain a conviction under the theory of accomplice liability for the murder.
 
 
 16
 In Lincoln's first trial, the jury apparently determined there was insufficient proof of a contract, yet convicted him of murder on accomplice liability based on the evidence presented by the State. The conduct on which accomplice liability is based is the knowing facilitation or promotion of a murder; proof of such conduct does not require showing of a contract for murder, or a hiring. The State need not prove murder for hire to establish the elements of murder under accomplice liability. Thus, under Grady, Lincoln is not being retried for conduct which constitutes an offense for which he has been acquitted. He is being retried for the conduct of murder, based on the theory of accomplice liability, for which he was convicted of in the first trial. Even Lincoln concedes that a third trial is probably not prohibited by Grady if the prosecution goes forward under a theory of facilitation or promotion of a murder. The State is free to proceed to trial and present evidence tending to prove that Lincoln was an accomplice in the murder of Paul Warford.
 
 
 17
 At oral argument, the State informed the court that it would seek to introduce evidence of Lincoln's hiring of Kekona, but that it intended to proceed on the broader and less specific theory of promotion and facilitation. The Court has held that the presentation of specific evidence in one trial does not forever prevent the government from introducing the same evidence in a subsequent proceeding. Double jeopardy merely bars the government from proving conduct that constitutes an offense for which the defendant has already been prosecuted. See Grady, 495 U.S. at 521-22 & n. 12. The first jury's determination of no "Murder for Hire" is not inconsistent with the State's theory, nor would a future guilty verdict for the promotion and facilitation of murder be contradictory. See Pettaway, 943 F.2d at 1047. Because the reprosecution of Lincoln for the murder of Paul Warford will not necessarily violate the Double Jeopardy Clause of the Fifth Amendment, the district court's denial of Lincoln's writ of habeas corpus is affirmed.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Because Lincoln's second conviction was reversed and remanded by the Hawaii Supreme Court, we need not consider whether the Double Jeopardy Clause was violated at that trial
 
 
 [2]
 Additionally, the first jury found Lincoln guilty of the attempted murder of Savage. Because it is undisputed that the second jury acquitted Lincoln on all charges related to Blue and Savage, we focus only on the murder for hire question as it concerns Lincoln's retrial for the killing of Warford
 
 
 [3]
 We reject the State's contention that consideration of this issue is foreclosed by the Supreme Court's decision in McCleskey v. Zant, 111 S.Ct. 1454 (1991). McCleskey does not require the petitioner to predict which constitutional violations may occur in subsequent prosecutions